UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

LONN WALTON,                    )
                                )
            Plaintiff,          )
                                )
    vs.                         )       No. 4:09CV4 HEA
                                )
WAL-MART STORES, INC. et al.,   )
                                )
            Defendants.         )

## OPINION,  MEMORANDUM AND ORDER

This matter is before the Court on Defendant Wal-Mart Stores, Inc.'s

Amended Motion for Summary Judgment, [Doc. No. 34].[1]  Plaintiff opposes the

motion.  Also before the Court is Defendants' Motion to Strike Plaintiff's Statement

of Facts, [Doc. No. 63].  Plaintiff has not responded to the Motion to Strike.  For the

reasons set forth below, the Motion to Strike is granted, and the Motion for

Summary Judgment is  granted in part and denied in part.

## Facts and Background

Plaintiff began working for Wal-Mart in October 16, 2000.  When he began

---

[1]  The Motion for Summary Judgment was filed prior to the filing of Plaintiff's Second
Amended Complaint, which added Defendant Gary McLaughlin and added claims for age
discrimination in employment.  Defendant McLaughlin has not filed a Motion for Summary
Judgment.  For the purposes of the motion for summary judgment, the analysis of Plaintiff's
claims against Defendant Wal-Mart is the same for age discrimination as it is for race
discrimination.  The Court, therefore construes the Motion for Summary Judgment as having been
filed by Wal-Mart Stores, Inc. with respect to the Second Amended Complaint.

his employment, Plaintiff was an hourly trainee.  Plaintiff has been an Assistant

Manager at Wal-Mart Store #1188 in St. Ann, Missouri since March 10, 2001.

Wal-Mart Stores East, L.P. is the operating entity for Wal-Mart Store #1188.

The typical progression through management at Wal-Mart is Assistant Manager,

Co-Manager, Store Manager, and Market, or District, Manager.

The St. Ann Wal-Mart is located in Market 61 which use to be referred to as

District 61.  There are seven (7) stores in District 61.  There are three (3) District's

in the area, South St. Louis, Illinois and St. Louis/St. Charles.

Management in the Market Office have the say on who gets promoted.  Wal-

Mart has an internal intranet system which includes a career preference system.

Plaintiff has never worked at a Wal-Mart Supercenter, has never worked in a

Wal-Mart with an expanded food section, and has never worked outside Market 61,

although Plaintiff did have training at the Troy Supercenter and went to Lake Saint

Louis for food training in a supercenter.

Plaintiff expressed interest in promotions through Wal-Mart's computerized

Career Preferences System.  Through this system, a Wal-Mart employee can

express interest in any future open position which meets certain criteria the

employee chooses.  Plaintiff applied for sixty promotions between 2005 and 2008.

Plaintiff admits that, in regard to some of the promotions for which he applied, a

more qualified candidate received the promotion.

Plaintiff began applying for manager positions in 2005. Plaintiff applied several times for manager positions in 2006 and did not receive an interview. In 2008, Plaintiff applied for several manager and co-manager positions and did not receive an interview. Plaintiff has never been given a reason as to why he has not been interviewed. Plaintiff has applied for over 60 promotions between 2005 and 2008. In October 2007, Plaintiff applied for the available manager position at Facility 295 in Eureka, Missouri. He did not receive an interview or the position. In October 2007, Plaintiff applied for the available manager position at Facility 435 in Highland, Illinois. He did not receive an interview or the position. In October 2007, Plaintiff applied for the available Co-Manager position at Facility 5150 in Maplewood, Missouri. He did not receive an interview or the position. In November 2007, Plaintiff applied for the Manger position at Facility 253 in Jerseyville, Illinois. He did not receive an interview or the position. In November 2007, Plaintiff applied for the Manager position at Facility 2600 in Chesterfield, Missouri. He did not receive an interview or the position. In November 2007, Plaintiff applied for the Co-Manager position at Facility 243 in Wentzville, Missouri. He did not receive an interview or the position. In November 2007, Plaintiff applied for the Co-Manager position at Facility 295 in Eureka, Missouri.

He did not receive an interview or the position.  In December 2007, Plaintiff applied for the Manager position at Facility 1188 in St. Ann, Missouri. He did not receive an interview or the position.  In January 2008, Plaintiff applied for the Co-Manager position at Facility 1188 in St. Ann, Missouri. He did not receive an interview or the position.  In April 2008, Plaintiff applied for the Manager position at Facility 334 in Carlinville, Illinois. He did not receive an interview or the position.  In April 2008, Plaintiff applied for the Manager position at Facility 172 in Washington, Missouri. He did not receive an interview or the position.  In April 2008, Plaintiff applied for the Co-Manager position at Facility 201 in Belleville, Illinois.  He did not receive an interview or the position.  In April 2008, Plaintiff applied for the Co-Manager position at Facility 1071 in Wood River, Illinois.  He did not receive an interview or the position.  In April 2008, Plaintiff applied for the Co-Manager position at Facility 213 in Litchfield, Illinois. He did not receive an interview or the position.   In May 2008, Plaintiff applied for the Co-Manager position at Facility 8205 in St. Louis, Missouri. He did not receive an interview or the position.  In May 2008, Plaintiff applied for the Co-Manager position at Facility 253 in Jerseyville, Illinois. He did not receive an interview or the position.  In May 2008, Plaintiff applied for the Co-Manager position at Facility 328 in Waterloo, Illinois.  He did not receive an interview or the position.

In May 2008, Plaintiff applied for the Co-Manager position at Facility 2213 in St. Louis, Missouri. He did not receive an interview or the position. In May 2008, Plaintiff applied for the Co-Manager position at Facility 2600 in Chesterfield, Missouri. He did not receive an interview or the position. In May 2008, Plaintiff applied for the Co-Manager position at Facility 805 in Fenton, Missouri. He did not receive an interview or the position. 56. In May 2008, Plaintiff applied for the Co-Manager position at Facility 8251 in Saint Charles, Missouri. He did not receive an interview or the position. In August, 2008, Plaintiff applied for the Co-Manager position at Facility 172 in Washington, Missouri. He did not receive an interview or the position.

On February 22, 2002, Plaintiff received a Management Performance Appraisal which indicated that he "meets expectations". This evaluation was given by his supervisor, Jeff Hines. On March 20, 2003, Plaintiff received a Field Management Performance Appraisal from his supervisor, Jeff Hines, which indicated that Plaintiff "meets expectations." On February 18, 2004, Plaintiff received a Field Management Performance Appraisal signed by Judy Patrick and Cindy Galati stating that he is a "valued performer." On February 17, 2005, Plaintiff received a Performance Evaluation indicated that he was a "valued performer." Said evaluation was signed by Wes McMillan and Cindy Galati on

March 24, 2005.  Plaintiff's overall rating on his March 24, 2005 evaluation is on the higher end of a valued performer rating.   Plaintiff's next performance evaluation indicated that was a "valued performer" and it was signed by Wes McMillan on February 14, 2006 and Cindy Galati on April 18, 2006.  Plaintiff received an evaluation on April 12, 2007 indicating that he was a "valued performer" signed by Wes McMillan.  On April 7, 2008, Plaintiff received a Performance Evaluation indicating that he was "a solid performer" signed by Carol Bush Walker and Tracy Ratcliff.

Plaintiff began applying for manager positions in 2005.  Plaintiff applied several times for manager positions in 2006 and did not receive an interview.  In 2008, Plaintiff applied for several manager and co-manager positions and did not receive an interview.  Plaintiff has never been given a reason as to why he has not been interviewed.  Plaintiff has applied for over 60 promotions between 2005 and 2008.  In October 2007, Plaintiff applied for the available manager position at Facility 295 in Eureka, Missouri. He did not receive an interview or the position. In October 2007, Plaintiff applied for the available manager position at Facility 435 in Highland, Illinois. He did not receive an interview or the position.  In October 2007, Plaintiff applied for the available Co-Manager position at Facility 5150 in Maplewood, Missouri. He did not receive an interview or the position.  In

November 2007, Plaintiff applied for the Manger position at Facility 253 in Jerseyville, Illinois. He did not receive an interview or the position. In November 2007, Plaintiff applied for the Manager position at Facility 2600 in Chesterfield, Missouri. He did not receive an interview or the position. In November 2007, Plaintiff applied for the Co-Manager position at Facility 243 in Wentzville, Missouri. He did not receive an interview or the position. In November 2007, Plaintiff applied for the Co-Manager position at Facility 295 in Eureka, Missouri. He did not receive an interview or the position. In December 2007, Plaintiff applied for the Manager position at Facility 1188 in St. Ann, Missouri. He did not receive an interview or the position. In January 2008, Plaintiff applied for the Co-Manager position at Facility 1188 in St. Ann, Missouri. He did not receive an interview or the position. In April 2008, Plaintiff applied for the Manager position at Facility 334 in Carlinville, Illinois. He did not receive an interview or the position. In April 2008, Plaintiff applied for the Manager position at Facility 172 in Washington, Missouri. He did not receive an interview or the position. In April 2008, Plaintiff applied for the Co-Manager position at Facility 201 in Belleville, Illinois. He did not receive an interview or the position. In April 2008, Plaintiff applied for the Co-Manager position at Facility 1071 in Wood River, Illinois. He did not receive an interview or the position. In April 2008, Plaintiff applied for the Co-Manager position at Facility

213 in Litchfield, Illinois. He did not receive an interview or the position.   In May 2008, Plaintiff applied for the Co-Manager position at Facility 8205 in St. Louis, Missouri. He did not receive an interview or the position.  In May 2008, Plaintiff applied for the Co-Manager position at Facility 253 in Jerseyville, Illinois. He did not receive an interview or the position.  In May 2008, Plaintiff applied for the Co-Manager position at Facility 328 in Waterloo, Illinois.  He did not receive an interview or the position.

In May 2008, Plaintiff applied for the Co-Manager position at Facility 2213 in St. Louis, Missouri.  He did not receive an interview or the position.  In May 2008, Plaintiff applied for the Co-Manager position at Facility 2600 in Chesterfield, Missouri.  He did not receive an interview or the position.  In May 2008, Plaintiff applied for the Co-Manager position at Facility 805 in Fenton, Missouri.  He did not receive an interview or the position. 56. In May 2008, Plaintiff applied for the Co-Manager position at Facility 8251 in Saint Charles, Missouri. He did not receive an interview or the position.  In August, 2008, Plaintiff applied for the Co-Manager position at Facility 172 in Washington, Missouri.  He did not receive an interview or the position.

Plaintiff applied for a Store Manager position which was ultimately received by Thomas Smith on November 12, 2007.  Before receiving the Chesterfield,

Missouri Store Manager position, Smith had been serving as a Co-Manager at a different store since October 5, 2002. Plaintiff believes he is more qualified than Smith.

Plaintiff identified other Wal-Mart managers whom he believes received more favorable treatment than him in relation to his failure to promote claim: Arthur Gilka, Devon Baron, Eddie Barron, Matt Phillips, Bart Bland, Mark Wilson, Paul Roberts, Philipa Garrett, and John Fakes.

Plaintiff applied for a Store Manager position that was received by David Biram[2] on August 18, 2007. Biram had been serving as a Co-Manager at a different store since July 24, 2004. Biram has worked for Wal-Mart since 1996.

Plaintiff applied for a Co-Manager position which was ultimately received by Matt Phillips on July 25, 2005. Phillips began working for Wal-Mart in 1988. From July 18, 1998 through August 10, 2002, Phillips managed a Wal-Mart specialty group on a District-wide basis. As a District Manager, Specialty Group, Phillips was on the same level of authority as a store manager in terms of Wal-Mart's chain of command.

Plaintiff applied for a Co-Manager position which was ultimately received by

---

[2] Plaintiff did not apply for any position that was received by anyone named Devon Baron.

Paul Roberts on November 8, 2005. At the time of this promotion, Roberts had been a Wal-Mart employee for over sixteen years. Roberts became an Assistant Manager in 1993 and served as a Store Manager from 1995 through 1999. Roberts was then an Assistant Manager from 2002 through November, 2005.

Plaintiff never applied for a promotion into a position which was received by an individual named Jenny Levell. Plaintiff claims that he was prevented from doing so due to a Coaching.

On February 22, 2002, Plaintiff received a Management Performance Appraisal which indicated that he "meets expectations." This evaluation was given by his supervisor, Jeff Hines. On March 20, 2003, Plaintiff received a Field Management Performance Appraisal from his supervisor, Jeff Hines, which indicated that Plaintiff "meets expectations." On February 18, 2004, Plaintiff received a Field Management Performance Appraisal signed by Judy Patrick and Cindy Galati stating that he is a "valued performer." On February 17, 2005, Plaintiff received a Performance Evaluation indicated that he was a "valued performer." Said evaluation was signed by Wes McMillan and Cindy Galati on March 24, 2005. Plaintiff's overall rating on his March 24, 2005 evaluation is on the higher end of a valued performer rating. Plaintiff's next performance evaluation indicated that was a "valued performer" and it was signed by Wes McMillan on

February 14, 2006 and Cindy Galati on April 18, 2006. Plaintiff received an evaluation on April 12, 2007 indicating that he was a "valued performer" signed by Wes McMillan. On April 7, 2008, Plaintiff received a Performance Evaluation indicating that he was "a solid performer" signed by Carol Bush Walker and Tracy Ratcliff.

Plaintiff contends that he was more qualified than other candidates in part because he owned his own variety store for three and half years. However, when asked if his variety store failed after three and half years, Plaintiff contended he "sold it out" because his "lifestyle was not as good as what it was" and he wanted to "increase [his] lifestyle."

Plaintiff's variety store generated approximately $300,000 in annual revenue. The Family Dollar stores which Plaintiff managed prior to his employment with Wal-Mart generated approximately $2,000,000 in annual revenue.

In the St. Ann, Missouri Wal-Mart Store at which Plaintiff works, the Electronics Department alone generates approximately $5,000,000 in annual revenue. The Electronics Department is supervised by an hourly Associate. In the chain of command, an hourly Associate is lower than an Assistant Manager. Plaintiff admitted that when he applied for promotions outside of Market 61 – the Market in which Plaintiff worked – his applications were a "long shot"

because decision-makers in other Markets are not familiar with Plaintiff.

Carol Bush-Walker, an African-American female, was promoted into one of the positions Plaintiff sought.

Plaintiff admits that, prior to August 19, 2008, Wal-Mart received complaints from customers regarding their interactions with Plaintiff, though Plaintiff denies being advised of the complaints.

On March 20, 2008, Wal-Mart received a complaint from a customer who had attempted to exchange a defective vacuum cleaner. According to the customer, Plaintiff spoke with her and was rude. The customer was told that because she did not have a receipt, she would need to return the vacuum to the manufacturer.

On May 16, 2008, Wal-Mart received a complaint from a customer who interacted with Plaintiff while attempting to return two curtain rods. Plaintiff refused to give the customer store credit and was rude to her.

On May 29, 2008, Wal-Mart received a complaint from a customer who interacted with Plaintiff after attempting to return beverage napkins which cost 99¢ per pack. After her return was refused, the customer spoke with Plaintiff on the telephone. According to the customer, Plaintiff told her, "Lady, I have customers here," and hung up on her.

Plaintiff admits that in July of 2008, he asked an angry customer who was

attempting to return an air conditioner to leave the Store.  The customer created a

scene in the customer service area.  The customer who attempted to return the air

conditioner called Wal-Mart and complained that Plaintiff treated her with total

disrespect.

On August 6, 2008, Wal-Mart received a complaint from a customer who

interacted with Plaintiff while attempting to return a defective DVD. According to

the customer, the manager of the Electronics Department told her to return the

defective DVD.  However, when the customer attempted to do so, Plaintiff refused

the exchange because the customer did not have a receipt.  According to the

customer, Plaintiff "threw her out of the store."  Plaintiff avers that the customer

attempting to return the DVD was yelling and cursing at one of the Associates

behind the counter and Plaintiff asked her to calm down or she would be asked to

leave.

Pursuant to Wal-Mart's corporate policy on coaching for improvement,

"Coaching for improvement, documentation will be maintained electronically for 12

months under an 'active' status. Twelve months after the last Coaching for

Improvement session the Coaching for Improvement documentation becomes

'inactive'."  If a Wal-Mart employee receives a written coaching for improvement

then he is ineligible for promotion for twelve (12) months.

Pursuant to Wal-Mart's Corporate Policy, "verbal Coaching is used to notify an Associate that their conduct of performance does not meet Wal-Mart's stated expectations, and what they need to do to correct the situation. It is always done verbally in a constructive, non-intimidating way." For a verbal Coaching, "The Hourly Supervisor and salaried member of management should enter the Coaching into the system and then acknowledge the Verbal Coaching once it has been conducted". Misconduct may result in, "Additional disciplinary action up to and including termination". "Examples of misconduct include, but are not limited to: …Horseplay." "Investigations are a routine part of the Coaching process. It insures a complete review of the facts and allows time for proper consideration of appropriate disciplinary action." The guidelines for administering the Coaching for Improvement process include: "1. Gather the facts including witness statements, if appropriate. 2. Discuss the situation with Associate to get their side and any additional facts. Gather Associate(s) statement, if applicable."

On August 19, 2008, Plaintiff received a Written Coaching for Improvement. The August 19, 2008 Written Coaching stated as follows: Lonn has had several customer complaints at store level and market level in regards to returns and customer experience specifically middle of July a customer wanted to return an air conditioner. Customer had receipt as well as merchandise. Customer was treated

with total disrespect and created a scene in the customer service center. This is unacceptable behavior and will not be tolerated.

On September 26, 2008, Plaintiff was placed on a Performance Improvement Plan. The Plan required Plaintiff to focus on the following performance issues: (1) customer experience; (2) use of appropriate judgment as it relates to customer service; (3) manage merchandising operations to ensure store standards are in line with company standards; and (4) drive total store experience by applying methods for solving customer complaints.

The September 26, 2008 Performance Improvement Plan also resulted from Plaintiff's conduct which caused five customer complaints within a six month period, though Plaintiff denies having been advised of the complaints and avers that he was told he was receiving the written Coaching because of the incident involving the air conditioner.

## Discussion

## Motion to Strike

Defendants move to strike certain portions of Plaintiff's Statement of Material Facts. Paragraphs 140-176 are purportedly supported by an affidavit of Edward Dilworth. Plaintiff has not attached such an affidavit to his Motion or Memorandum in support thereof. Defendant has attached a copy of an email sent by counsel

wherein counsel states that she withdraws the affidavit. Plaintiff has not responded

to this contention. As such, the Motion to Strike Paragraphs 140-176 of the

Statement of Material Facts is granted.

Defendant is also correct that the Statement of Material Facts contain facts

which are unsupported by evidence, rather, they are based on Plaintiff's subjective

opinions and they fail to establish that Plaintiff has personal knowledge of the

statements made in Plaintiff's affidavits. These paragraphs are also stricken.

Other statements of which Defendant complains are based on hearsay and

contradict Plaintiff's own representations and admissions. These paragraphs are

stricken.

## Summary Judgment Motion

Plaintiff's Second Amended Complaint alleges race discrimination in

violation of the Missouri Human Rights Act, (MHRA), (Counts I and VII); race

discrimination in violation of Title VII, (Counts II and VIII), retaliation in violation

of the MHRA, (Counts III and IX), retaliation in violation of Title VII, (Counts IV

and X), age discrimination in violation of the MHRA, (Counts V and XI), age

discrimination in violation of the Age Discrimination in Employment Act, (ADEA),

(Counts VI and XII) against Defendants Wal-Mart and Gary McGlaughlin.[3]

## Standard of Review for Summary Judgment

The standard for summary judgment is well settled. In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); "Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Myers v. Lutsen Mtns. Corp.*, 587 F.3d 891, 893 (8th Cir.2009). If a nonmoving party has failed to establish the existence of an element of that party's claim, summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)" *Cole v. Homier Distributing Co., Inc.,* 2010 WL 1171741, 6 (8th Cir. 2010). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex,* 477 U.S. at 322; *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). Once the

---

[3] It appears from the record and the exhibits presented that the correct spelling of this Defendant's name is "McLaughlin."

moving party has met this burden, the nonmoving party may not rest on the

allegations in his pleadings but by affidavit or other evidence must set forth specific

facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e);

*Anderson* 477 U.S. at 256; *Littrell ,* 459 F.3d at 921. "The party opposing

summary judgment may not rest on the allegations in its pleadings; it must 'set forth

specific facts showing that there is a genuine issue for trial.'" *United of Omaha Life*

*Ins. Co. v. Honea,* 458 F.3d 788, 791 (8th Cir.2006) (quoting Fed.R.Civ.P. 56(e));

"'Only disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment.' *Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)." *Hitt v. Harsco Corp.,* 356 F.3d

920, 923 (8th Cir. 2004). An issue of fact is genuine when "a reasonable jury could

return a verdict for the nonmoving party" on the question. *Anderson,* 477 U.S. at

248; *Woods,* 409 F.3d at 990. To survive a motion for summary judgment, the

"nonmoving party must 'substantiate his allegations with sufficient probative

evidence [that] would permit a finding in [his] favor based on more than mere

speculation, conjecture, or fantasy.' *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d

237, 241 (8th Cir. 1995)(quotation omitted)." *Putman v. Unity Health System*, 348

F.3d 732, 733-34 (8th Cir. 2003). A plaintiff may not merely point to unsupported

self-serving allegations, but must substantiate allegations with sufficient probative

evidence that would permit a finding in the plaintiff's favor. *Wilson v. Int'l Bus. Mach. Corp.,* 62 F.3d 237, 241 (8th Cir.1995); *Smith v. International Paper Co.*, 523 F.3d 845, 848 (8th Cir. 2008). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. 242 at 252; *Davidson & Associates v. Jung* 422 F.3d 630, 638 (8th Cir. 2005); *Smith*, 523 F.3d at 848.

Summary Judgment will be granted when, viewing the evidence in the light most favorable to the nonmoving party and giving the nonmoving party the benefit of all reasonable inferences, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Samuels v. Kansas City Mo. Sch. Dist.,* 437 F.3d 797, 801 (8th Cir. 2006). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin,* 483 F.3d 516, 526-7(8th Cir. 2007). "Simply referencing the complaint, or alleging that a fact is otherwise, is insufficient to show there is a genuine issue for trial." *Kountze ex rel. Hitchcock Foundation v. Gaines*, 536 F.3d 813, 817 (8th Cir. 2008). While the moving party bears "the initial burden of informing the district court of the basis for its motion, and identifying those portions of the

pleadings," the discovery, disclosure materials and affidavits "which it believes demonstrate the absence of a genuine issue of material fact," *Celotex,* 477 U.S. at 323. It is incumbent on the party with the burden of proof at trial to present sufficient evidence to establish the elements essential to its claims. See *Celotex*, 477 U.S. at 322-23. Thus, Plaintiff, even though the non-moving party for summary-judgment purposes, "must still 'present[ ] evidence sufficiently supporting the disputed material facts [such] that a reasonable jury could return a verdict in [its] favor.'" *Pope v. ESA Servs., Inc.*, 406 F.3d 1001, 1003-04 (8th Cir.2005) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir.1992)).

*Glorvigen v. Cirrus Design Corp.,* 581 F.3d 737, 742 -743 (8th Cir. 2009).

"Although summary judgment is to be used sparingly in employment discrimination cases, it is appropriate where one party has failed to present evidence sufficient to create a jury question as to an essential element of its claim." *Arnold v. Nursing and Rehabilitation Center at Good Shepherd*, LLC, 471 F.3d 843, 846 (8th Cir.2006) (citation omitted). "To successfully parry the defendants' motion for summary judgment, [Plaintiff] must put forth either (1) proof of 'direct evidence' of discrimination; or (2) a prima facie case of unlawful discrimination through circumstantial evidence under the *McDonnell Douglas* burden-shifting test, and then rebutting any proffered nondiscriminatory reasons for the employment decision with

sufficient evidence of pretext. *Griffith*, 387 F.3d [733,] 736 [8th Cir. 2004]." *King v. Hardesty,* 2008 WL 539238, 4 (8th Cir. 2008).

A plaintiff in an employment discrimination case under Title VII, therefore, may avoid summary judgment by following the *McDonnell Douglas* framework *or* by presenting direct evidence of discrimination. *Griffith*, 387 F.3d at 736. Direct evidence in this context must be strong enough to show "a specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated" the employment decision. *Thomas v. First Nat'l Bank of Wynne,* 111 F.3d 64, 66 (8th Cir.1997) (internal quotations omitted).

Direct evidence includes "evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude," where it is sufficient to support an inference that discriminatory attitude more likely than not was a motivating factor. *Radabaugh v. Zip Feed Mills, Inc.,* 997 F.2d 444, 449 (8th Cir.1993) (internal quotations omitted).

If "the plaintiff lacks direct evidence of discrimination, the plaintiff may survive the defendant's motion for summary judgment by creating an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *McGinnis v. Union*

*Pacific R.R.*, 496 F.3d 868, 873 (8th Cir.2007). "Under the *McDonnell Douglas* framework, a presumption of discrimination is created when the plaintiff meets his burden of establishing a prima facie case of employment discrimination. A minimal evidentiary showing will satisfy this burden of production." *Davis v. KARK-TV, Inc.,* 421 F.3d 699, 704 (8th Cir.2005). To establish his *prima facie* case of racial discrimination, Plaintiff must show: 1) he is a member of a protected class; 2) he met his employer's legitimate expectations; 3) he suffered an adverse employment action; and 4) similarly situated employees who were not members of the protected class were treated differently. *Higgins v. Gonzales,* 481 F.3d 578, 584 (8th Cir. 2007). See also, *Fields v. Shelter Mut. Ins. Co.* 520 F.3d 859, 864 (8th Cir. 2008)(To meet his burden, Plaintiff "'must show the following: (1) that [he] is a member of a protected class; (2) that [he] was meeting [his] employer's legitimate job expectations; (3) that [he] suffered an adverse employment action; and (4) that similarly situated employees outside the protected class were treated differently.' *Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 616 (8th Cir.2007).")

"The establishment of a prima facie case creates a presumption of unlawful discrimination, which in turn requires a defendant to come forward with evidence of a legitimate, nondiscriminatory reason for the defendant's actions." *Id.* (citation omitted). "If the defendant articulates such a reason, the burden returns to the

plaintiff to show the defendant's proffered reason is pretextual." *Id.* (citation omitted).

Because Plaintiff asserts claims under the MHRA, the Court also looks to Missouri law in resolving Defendant's Motion. Under the MHRA, an employer is prohibited from discharging or otherwise discriminating against an individual based on, among other things, race and age. Mo.Rev.Stat. § 213.055. The MHRA defines "discrimination" as "any unfair treatment based on [race, . . . ], age as it relates to employment" Mo.Rev.Stat. § 213.010(5). In *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 820- 21 (Mo.2007) (en banc ), the Missouri Supreme Court held that a discrimination claim survives summary judgment "if there is a genuine issue of material fact as to whether [race and/or age] was a 'contributing factor' in [defendant's] termination decision." *Id.* at 820; *Baker v. Silver Oak Senior Living Mgmt. Co.*, 2007 WL 2994318, at *7 (W.D.Mo. Oct. 11, 2007)(analyzing age discrimination claim brought under MHRA using contributory factor test).

The Missouri Supreme Court has also applied the contributing factor test discussed above to retaliation claims under the MHRA. *Hill v. Ford Motor Co.*, 277 S.W.3d 659 (Mo.2009) (en banc ). "Both the claim for a hostile work environment and the claim for retaliation are governed by the MHRA, not by federal

law. See §§ 213.055 and 213.070; *Daugherty v. City of Maryland Heights*, 231

S.W.3d 814, 818 (Mo. banc 2007)." *Id.*, at 662.

> *Daugherty* rejected defendant's argument in that case that the burden-shifting analysis that *McDonnell Douglas* requires be applied to Title VII cases to make out an indirect federal discrimination claim applies to claims of harassment under state law. Rather, *Daugherty* teaches, the right to sue under Missouri law is quite naturally governed by the relevant Missouri statute, the MHRA. That statute: defines "discrimination" to include "***any*** unfair treatment based on race, color, religion, national origin, ancestry, sex, age as it relates to employment, disability, or familial status as it relates to housing." Section 213.010(5) (emphasis added). Nothing in this statutory language of the MHRA requires a plaintiff to prove that discrimination was a substantial or determining factor in an employment decision; if consideration of age, disability, or other protected characteristics contributed to the unfair treatment, that is sufficient. *Daugherty*, 231 S.W.3d at 819 (citation omitted).

> \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

> Retaliation for opposing discrimination or for filing a complaint constitutes discrimination under the MHRA and, like other forms of discrimination, is proved by showing the elements required by the MHRA, rather than by reference to cases such as *McDonnell Douglas* analyzing violations of federal law. To the extent Missouri cases decided prior to *Daugherty* suggest to the contrary, they are not to be followed.

*Hill*, 277 S.W.3d at 664 -665 (footnote omitted).

## **Naming of Wal-Mart Stores, Inc. as Defendant**

Defendant argues that Plaintiff's employer is actually Wal-Mart Associates,

Inc.   If a plaintiff has named and served the wrong defendant, or has named and

served the right defendant by the wrong name, the decision whether to dismiss the complaint without prejudice under Rule 4(m), or to grant the plaintiff leave to amend, is critical when, as in this case, the statute of limitations expired after the filing of the original complaint.  If the plaintiff is forced to file a new suit, he will be time-barred.  To proceed in the initial suit, he needs to amend her complaint to name the proper defendant, and the amended complaint must relate back to the original complaint to avoid the statute of limitations bar.  The Federal Rules of Civil Procedure reflect the traditional misnomer principle in Rule 4(a), which gives the district court discretion to amend a summons, and, more importantly, in Rule 15(c), which provides in relevant part:

(c) Relation Back of Amendments.

(1) When an Amendment Relates Back.  An amendment of a pleading relates back to the date of the original pleading when:

* * * * * *

(C) the amendment changes the party or the naming of the party against whom a claim is asserted if Rule 15(c)(1)(B) is satisfied and, if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

> (I) received such notice of the action that it will not be prejudiced in defending on the merits, and

> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning

the proper party's identity.

Rule 15(c)(1)(B) is satisfied.  Plaintiff's application for a management position was with Wal-Mart.  The policies that apply to Plaintiff as a Wal-Mart employee were distributed by Wal-Mart Stores, Inc.  The contact address on the policies is for Wal-Mart Stores, Inc.  Plaintiff is paid by Wal-Mart and the return address on the envelope in which his paycheck is mailed is by Wal-Mart.  The paycheck and the return address on the envelope have the same address as Wal-Mart Stores, Inc.  Wal-Mart Stores, Inc. has participated in this action as if it were the properly named defendant. At no time did it move to dismiss, the proper procedure for a misnomer situation.  See *Roberts v. Michaels*, 219 F.3d 775, 778 - 779 (8th Cir. 2000).  Plaintiff shall be given leave to amend his pleadings to properly name Wal-Mart Associates, Inc.

## Failure to Promote-Timeliness

Before a Title VII action can be brought, a plaintiff must file a charge with the EEOC within 300 days of the event giving rise to the cause of action."  *Klein v. McGowan*, 198 F.3d 705, 709 (8th Cir .1999) (citing 42 U.S.C. § 2000e-5(e)).[4]

---

[4] 42 U.S.C. § 2000e-5(e) provides:  A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an

Under the MHRA, a complaint must be filed with the Missouri Commission on Human Rights within 180 days of the alleged act of discrimination.[5]

"Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.  Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).  "'The proper exhaustion of administrative remedies gives the plaintiff a green light to bring his or her employment-discrimination claim, along with

---

unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

[5] Section 213.075 of the Missouri Revised Statutes provides:  Any person claiming to be aggrieved by an unlawful discriminatory practice may make, sign and file with the commission a verified complaint in writing, within one hundred eighty days of the alleged act of discrimination, which shall state the name and address of the person alleged to have committed the unlawful discriminatory practice and which shall set forth the particulars thereof and such other information as may be required by the commission. The complainant's agent, attorney or the attorney general may, in like manner, make, sign and file such complaint.

allegations that are 'like or reasonably related' to that claim, in federal court.'"
*Shelton v. Boeing Co.*, 399 F.3d 909, 912 (8th Cir.2005) (quoting *Shannon v. Ford Motor Co.*, 72 F.3d 678, 684 (8th Cir.1996)). "Although [the Eighth Circuit Court of Appeals] ha[s] often stated that [it] will liberally construe an administrative charge for exhaustion of remedies purposes, [it] also recognize[s] that 'there is a difference between liberally reading a claim which lacks specificity, and inventing, *ex nihilo*, a claim which simply was not made." *Id.* (quoting *Shannon*, 72 F.3d at 684). "The claims of employment discrimination in the complaint may be as broad as the scope of the [administrative agency's] investigation which reasonably could be expected to result from the administrative charge." *Id.* (quoting *Kells v. Sinclair Buick-GMC Truck, Inc.*, 210 F.3d 827, 836 (8th Cir.2006)). "'Although an [administrative agency] complaint need not specifically articulate the precise claim, it must nevertheless be sufficient to give the employer notice of the subject matter of the charge and identify generally the basis for a claim.'" *Humphries v. Pulaski County Special Sch. Dist.*, 580 F.3d 688, 697 (8th Cir.2009) (quoting *Fair v. Norris*, 480 F.3d 865, 867 n. 2 (8th Cir.2007)).

Several of Plaintiff's claims are therefore time barred. One hundred and eighty days from the filing of this action on February 19, 2008 is August 23, 2007; three hundred days from the filing of the action is April 25, 2007. Summary

judgment is appropriate as to any claims of improper failure to promote Plaintiff which occurred prior to the stated dates.

## Failure to Promote-Title VII

Plaintiff has not presented evidence of direct discrimination. Therefore, in order to survive a motion for summary judgment, Plaintiff must present a *prima facie* case. To establish a *prima facie* case of discrimination in a failure to hire/promote claim, a plaintiff must show: (1) he is a member of a protected group; (2) he was qualified and applied for a promotion to an available position; (3) he was rejected; and (4) similarly situated employees, not part of the protected group were promoted instead. *Allen v. Tobacco Superstore, Inc.*, 475 F.3d 931, 937 (8th Cir.2007); *Pope v. ESA Servs., Inc.*, 406 F.3d 1001, 1007 (8th Cir.2005).

Plaintiff has failed to satisfy his obligation to establish a *prima facie* case of discrimination. While Plaintiff can establish that he is a member of the protected classes (race and age), that he applied for promotions for which he may have been qualified, and that he was rejected, Plaintiff has failed to present any evidence that similarly situated employees were promoted instead of him. Whereas Plaintiff himself believes he was more qualified than the employees who received the promotions, he has presented no specific, tangible evidence that similarly situated employees were treated differently. *Phillip v. Ford*, 413 F.3d 766 768-69 (8th Cir.

2005). While Plaintiff attempts to overcome this hurdle, he relies solely on a nonexistent affidavit and his own personal, subjective beliefs. The only evidence to which Plaintiff points in asserting that he was discrimination against are his own self serving allegations and speculations, which are wholly insufficient to create an issue of fact. *Davenport v. Riverview Gardens Sch. Dist.*, 30 F.3d 940, 945 (8th Cir.1994) (affirming summary judgment on race discrimination claim where "plaintiff presented no such evidence other than his own unsubstantiated allegations in deposition"); accord *Smith v. Int'l Paper Co.*, 523 F.3d 845, 848 (8th Cir.2008) (holding, in discrimination case, that "'[a] plaintiff may not merely point to unsupported self-serving allegations'" to defeat summary judgment) (quoting *Bass v. SBC Commc'ns, Inc.*, 418 F.3d 870, 872 (8th Cir.2005)); *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 917 (8th Cir.2006) (affirming summary judgment where plaintiff's evidence of pretext was "entirely speculative"). *Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1109 (8th Cir.1998) ("Title VII prohibits intentional discrimination based on certain, discreet classifications; it does not prohibit employment decisions based on other factors, such as job performance, erroneous evaluations, personality conflicts, or even unsound business practices.") (citing *Hill v. St. Louis Univ.*, 123 F.3d 1114, 1120 (8th Cir.1997)). Plaintiff simply cannot point to any evidence that indicates that race or age were the reasons for

failing to promote him.

Conversely, Defendant relies on facts which establish that the decisions it made regarding the promotions at issue were based on the qualifications of the promoted individuals as it seemed proper for its business. Plaintiff's efforts to establish that he was "more qualified" because of his experience prior to becoming employed by Defendant are unavailing. Defendant's supported evidence establishes that its decisions were based on experience within Wal-Mart's business. Courts do not "'sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except tot the extent that those judgments involve intentional discrimination.' *Rogers v. U.S. Bank, N.A.*, 417 F.3d 845, 854 (8th Cir. 2005)." *Elam v. Regions Financial Corp.*, 2010 WL 1526450 at * 5 (8th Cir. 2010). Plaintiff presents no evidence from which the Court could compare Plaintiff with promoted employees that were similarly situated in all relevant respects. *Elam*, 2010 WL 1526450 at * 6.

**Failure to Promote-MHRA**

As previously stated, under the MHRA, the salient inquiry does not require a plaintiff to set forth a *prima facie* case of discrimination, rather, in order to survive a summary judgment challenge under the MHRA, a plaintiff must merely establish that "there is a genuine issue of material fact as to whether [race or age] was a

'contributing factor' in [defendant's] termination decision." *Daugherty*, 231 S.W.3d at 820; accord *Baker v. Silver Oak Senior Living Mgmt. Co.*, 2007 WL 2994318, at *7 (analyzing age discrimination claim brought under MHRA using contributory factor test). Despite the adoption of the contributing factor test, state courts "deciding a case under the MHRA ... are guided by both Missouri law and federal employment discrimination caselaw that is consistent with Missouri law." *Daugherty*, 231 S.W.3d at 818 (citing *Midstate Oil Co., Inc. v. Mo. Comm'n on Human Rights*, 679 S.W.2d 842, 845-46 (Mo.1984) (en banc )). Defendant fails to address the applicable standard to be applied in MHRA cases. Plaintiff has presented evidence that no African American employees were promoted until well beyond the time he began applying for promotions. This fact might indicate that Plaintiff's race was indeed a "contributing" factor in his unsuccessful attempts at promotion. While Defendant challenges Plaintiff's evidence regarding the statistics with respect to promotions, Defendant neglects to recognize that under the MHRA, Plaintiff is not required to set forth a *prima facie* case of discrimination in order to withstand a summary judgment motion. As such, summary judgment on Plaintiff's MHRA claim of race and age discrimination is not appropriate at this time. Defendant has failed to present uncontested evidence that neither race nor age was a contributing factor in the denial of Plaintiff's applications for promotion.

**Retaliation-Title VII**

It is well-established that Title VII's anti-retaliation provision prevents employers from retaliating against employees who have acted to vindicate their statutorily-protected rights by reporting harassment or discrimination in the workplace. *Brannum v. Mo. Dep't of Corr.*, 518 F.3d 542, 547 (8th Cir.2008). Plaintiff presents no evidence of direct discrimination, therefore the *McDonnell Douglas* burden shifting framework is used to analyze his claim. "Retaliation claims in which there is no direct evidence of discrimination typically are analyzed under the framework of McDonnell Douglas ..." *Richey v. City of Independence,* 540 F.3d 779, 784 (8th Cir.2008); *Erenberg v. Methodist Hosp.*, 357 F.3d 787, 793 (8th Cir. 2004). Under this framework, the initial burden is on Plaintiff to establish a *prima facie* case of unlawful retaliation. *Id.* To establish a *prima facie* case of Title VII retaliation, Plaintiff must demonstrate that 1) he engaged in protected conduct; 2) a reasonable employee would have found his employer's retaliatory action materially adverse; and 3) the materially adverse action was causally linked to his protected conduct. *Devin v. Schwan's Home Serv., Inc.*, 491 F.3d 778, 785 (8th Cir.2007). See also, *Burkhart v. American Railcar Ind., Inc.,* Cause Number 09-2077/3043, (8th Cir. May 10, 2010).(Title VII retaliation claims are subject to the burden shifting framework of *McDonnell Douglas. McCullough v. Univ. of Ark. for Med.*

*Scis.*, 559 F.3d 855, 864 (8th Cir. 2009). "To state a prima facie case of retaliation, a plaintiff must show that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse action. *Id.* If [plaintiff] were to establish a prima facie case and [defendant] then proffered a legitimate, non-retaliatory reason for the action it took against her, she would have to present evidence that '(1) creates a question of fact as to whether [defendant's] proffered reason was pretextual and (2) creates a reasonable inference that [defendant] acted in retaliation.' *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002)"). "To make out a retaliation claim, the plaintiff must show that the protected conduct was a determinative-not merely motivating-factor in the employer's adverse employment decision." *Van Horn v. Best Buy Stores, L.P.*, 526 F.3d 1144, 1148 (8th Cir.2008)(Internal citation omitted).

First, Plaintiff must show that he engaged in protected conduct by either opposing an act of discrimination or participating in an investigation under Title VII. To satisfy this element, a "plaintiff need only report the alleged wrongful activity. There is no additional requirement that the plaintiff report the perceived failure of the company to take proper remedial action." *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 914 (8th Cir.2006). Protected activity includes "'an informal or formal complaint about, or other opposition to, an employer's practice or

act ... if the employee reasonably believes such an act to be in violation of the statute in question.'" *Jeseritz v. Potter*, 282 F.3d 542, 548 (8th Cir.2002) (quoting *Sherman v. Runyon*, 235 F.3d 406, 409 (8th Cir.2000)).

Plaintiff argues that the written Coaching and performance improvement plan was implemented in retaliation for his filing his charges of discrimination. Defendant does not dispute that Plaintiff engaged in protected activity by the filing of the charges. Rather, Defendant asserts that Plaintiff cannot meet his burden of establishing the second and third elements of a *prima facie* case.

As to the second element, Defendant argues that the placement on a performance improvement plan is not an adverse employment action. "'An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage.'" *Thomas v. Corwin*, 483 F.3d 516, 528 (8th Cir.2007) (quoting *Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 671 (8th Cir.2006)). This might include "'[t]ermination, cuts in pay or benefits, and *changes that affect an employee's future career prospects*,'" as well as "'circumstances amounting to a constructive discharge.'" *Higgins v. Gonzales*, 481 F.3d 578, 584 (8th Cir.2007) (quoting *Kerns v. Capital Graphics, Inc.*, 178 F.3d 1011, 1016-17 (8th Cir.1999)). *Clegg v. Arkansas Dept. of Correction*, 496 F.3d 922, 926 (8th Cir. 2007).(Emphasis added). "Minor changes in duties or working conditions, even

unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not" rise to the level of an adverse employment action. *Id.* Plaintiff points out that because of the Coaching and performance improvement plan's implementation, he was prevented from being eligible for promotions. This is sufficient to establish the adverse employment requirement at this stage of the litigation.

Plaintiff's *prima facie* case fails, however, with regard to the third element. "[W]hat is meant by 'causal link' in the present context is a showing that an employer's 'retaliatory motive played a part in the adverse employment action.'" *Kipp v. Mo. Highway and Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir.2002) (quoting *Sumner v. United States Postal Serv.*, 899 F.2d 203, 208- 209 (2d Cir.1990)). "Generally, more than a temporal connection ... is required to present a genuine factual issue on retaliation." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir.1999). "Our recent cases have, in our view, made clear that a 'mere coincidence of timing' can rarely be sufficient to establish a submissible case of [retaliation]." *Kipp*, 280 F.3d at 897.

Defendant maintains that Plaintiff has not met the third element of a claim of retaliation because the evidence presented does not establish a causal connection between Plaintiff's filing of the charges of discrimination and the disciplinary actions taken against him. In his response, Plaintiff argues that the disciplinary actions taken

against him were retaliatory because prior to the filing of the charges, he received no coaching incidents and his reviews were always good. Again, Plaintiff has not presented specific facts establishing that there is a genuine issue of material fact for trial. He merely relies on his own allegations that the coaching was in retaliation. Defendant, however documents the coaching with the customer complaints; five complaints received within the months preceding the written coaching for improvement. Moreover, the employment actions occurred over six months after Plaintiff's charge of discrimination. Summary judgment is appropriate as to Plaintiff's Title VII retaliation claim.

## Retaliation-MHRA

As previously stated, under the MHRA, a plaintiff is not required to set forth a *prima facie* case of retaliation. Plaintiff's retaliation claim can survive summary judgment if there is a genuine issue of material fact as to whether his protected activity was a "contributing factor" in Defendant's decision to implement the coaching and performance improvement plan which prevented him from applying for promotions. *Daugherty*, 231 S.W.3d at 820. (applying the Missouri approved instruction for MHRA claims to the summary judgment analysis). "A 'contributing' factor has been defined as one 'that contributed a share in anything or has a part in producing the effect.'" *Williams v. Trans States Airlines, Inc.*, 281 S.W.3d 854, 867

(Mo.Ct.App.2009) (citing *McBryde v. Ritenour Sch. Dist.*, 207 S.W.3d 162, 170 (Mo.Ct.App.2006)). The retaliation need not be a substantial or determining factor in the challenged employment action." *Stanley v. JerDen Foods, Inc.*, 263 S.W.3d 800, 803 (Mo.Ct.App.2008); *Hill*, 277 S.W.3d at 664-65. Missouri's safeguards under the MHRA, however, are not identical to the federal standards and can offer greater discrimination protection. *Daugherty*, 231 S.W.3d at 818-19.

Circumstantial evidence may be used to prove the facts necessary to sustain a recovery. *Fabric or, Inc. V. E.I. Dupont de Menours & Co.*, 24 S.w.3d 82, 94 (Mo.App. 2000). Plaintiff presents the fact that prior to his charge of discrimination, he had no performance coaching. He was not advised of several customer complaints, and his reviews had always been positive. When Plaintiff was about to be eligible to apply for promotions, he received another written Coaching. The Coaching was because he was not meeting his score card goals for the front end of the store, however, Plaintiff contends that he inherited the score card problem from the previous Assistant Manager and was not given sufficient time to bring the goals up. Taken together, these facts are sufficient to overcome Defendant's summary judgment challenge.

## Conclusion

Several of Plaintiff's claims are time barred as they were not filed within the

time limits for filing claims under the applicable statutes. Moreover, Plaintiff cannot satisfy his burden of establishing a *prima facie* case of discrimination based on his race or age, nor based on his claim of retaliation under the provisions of Title VII. Defendant is therefore entitled to summary judgment on Counts II, IV and VI of his Second Amended Complaint.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Amended Motion for Summary Judgment, [Doc. No. 34], is granted in part and denied in part.

A separate judgment in accordance with this Opinion, Memorandum and Order will be entered upon the resolution of the issues remaining in this matter.

Dated this 10th day of May, 2010.


_____
    HENRY EDWARD AUTREY
    UNITED STATES DISTRICT JUDGE